Lindsay G. Leavitt – 029110
Lleavitt@jsslaw.com
Dina G. Aouad - 036249
daouad@jsslaw.com
JENNINGS, STROUSS & SALMON, P.L.C.
A Professional Limited Liability Company
One East Washington Street
Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Michael Hasenkamp, individually, and on behalf of his minor daughter, A.H.,<br><br>Plaintiffs<br><br>vs.<br><br>The Shah Trust; 21,000 Holdings, LLC dba RE/MAX Fine Properties, an Arizona limited liability company; Edward Gunkel, an individual,<br><br>Defendants | No.<br><br>**PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION** |

Plaintiff Michael Hasenkamp individually, and on behalf of his minor daughter, A.H., is seeking a preliminary injunction against their residential landlord and property manager because the Hasenkamps are about to be evicted from their home on January 31, 2022, in violation of the Fair Housing Act ("FHA") and the Arizona Fair Housing Act ("AzFHA"). The Hasenkamps urgently request that the Court enjoin Defendants from evicting them from their rental home.

The Hasenkamps have resided at their rental home since October 16, 2020. On their Rental Application they disclosed that their two pet dogs and an Assistance animal (also a dog) would be residing with them. Their application was processed and accepted by Defendant Shah Trust (the "Landlord") and Defendants RE/MAX Fine Properties and Edward Gunkel (collectively the "Property Manager"). The

Lease began on October 16, 2020 and was scheduled to end on October 31, 2021.

In August 2021 the Property Manager e-mailed Mr. Hasenkamp asking whether he intended to renew the Lease for another year. He responded that he did. In September 2021 the Property Manager e-mailed Mr. Hasenkamp a copy of a 1-year lease renewal to review and sign. As more fully discussed below, Defendants immediately rescinded the lease renewal when they learned that A.H. had an Assistance animal (a dog) on the property—in fact, Defendants (incorrectly) declared that the presence of the Assistance animal was a "clear breach of the Lease."

Defendants gave the Hasenkamps an ultimatum if they wanted to remain on the Property: they had five days to either (1) remove the Assistance animal from the Property, or (2) pay a $600 non-refundable fee. When Mr. Hasenkamp responded that the Defendants' ultimatum was a violation of the FHA and AzFHA, Defendants immediately rescinded the lease extension. Defendants recently informed the Hasenkamps that they would be evicted from the Property on January 31, 2022.

## I. FACTUAL BACKGROUND

The following facts are supported by the Declaration of Michael Hasenkamp, written contemporaneous communications between the parties, and other business records.

### A. The Rental Application & Lease

On September 15, 2020, the Hasenkamps submitted an application to rent the property located at 5855 E Marconi Ave., Scottsdale, Arizona 85254 (the "Property"). In the Rental Application, the Hasenkamps disclosed that they would be bringing their two small dogs as pets, and, more importantly, also disclosed that A.H's assistance animal would live at the Property. **Exhibit A**. The Rental Application (correctly) noted that "assistive and service animals are not considered pets." **Exhibit A**.

The Hasenkamp's Rental Application was accepted and the Lease was signed

on October 16, 2020. It was scheduled to expire on October 31, 2021. In addition to monthly payments, the Lease required the Hasenkamps to pay a refundable $2,495.00 security deposit, a refundable $300.00 pet deposit, a non-refundable $495.00 cleaning fee, and a non-refundable $100.00 pet cleaning fee. This portion of the Lease, along with several others, again clarified that "**assistive and service animals are not considered pets.**" *See* **Exhibit B** (emphasis added).

**B. The Lease Renewal**

On August 31, 2021, the Property Manager contacted the Hasenkamps to inquire whether they intended to renew the Lease. **Exhibit C**. The Hasenkamps responded saying that they did. **Exhibit C**. On September 20, 2021, the Property Manager sent the Lease Renewal Agreement to the Hasenkamps for their review and signature. **Exhibit D**.

On September 22, 2021, the Property Manager e-mailed the Hasenkamps requesting an inspection of the Property, which occurred on September 29, 2021. **Exhibit E**. During the inspection, the Property Manager noticed A.H.'s Assistance animal and (incorrectly) commented that the animal was not listed on the Lease. **Exhibit F**. The Hasenkamps informed the Property Manager that the animal was an Assistance animal (*i.e.,* not a pet) and that it was disclosed by the Hasenkamps in the Rental Application. **Exhibit F**.

**C. The Hasenkamp's Assistance Animal**

Notwithstanding, the Property Manager e-mailed Mr. Hasenkamp the next day to notify him that the presence of the Assistance animal was "a clear breach of the lease." **Exhibit F**. The Property Manager then gave the Hasenkamps two options if they wanted to remain on the Property: (1) "remove the dog in the next five days," or (2) "pay a $600.00 non-refundable pet cleaning fee." The Property Manager then threatened that if the Hasenkamps did not act on one of the two options by October 5, 2021, the Property Manager would initiate eviction proceedings based on the

Hasenkamps purported "breach" of the Lease. **Exhibit F**.

On October 5th at 4:16 p.m.—the time of this e-mail is important—Mr. Hasenkamp responded to the Property Manager's demand that he vacate the Property or pay a penalty for the assistance animal. Mr. Hasenkamp explained to the Property Manager that the ultimatum violated federal and state law and, if not retracted, would cause financial harm and irreparable loss to the Hasenkamps. **Exhibit F**.

Rather than retract their discriminatory ultimatum, the Defendants doubled down. They retaliated against the Hasenkamps by rescinding the Lease Renewal less than 45 minutes after Mr. Hasenkamp informed them that his family's civil rights were being violated. **Exhibit G**. On December 2, 2021, the Hasenkamps received notice from the Defendants that their Lease will be terminated on January 31, 2022. **Exhibit H**.

## II. LEGAL ANALYIS

A plaintiff seeking a preliminary injunction must show that (1) s/he is likely to succeed on the merits, (2) is likely to suffer irreparable harm without an injunction, (3) the balance of the equities tips in his or her favor, and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 374 (2008). The first factor—likelihood of success on the merits—is the most important factor. *California v. Azar*, 950 F.3d 1067, 1083 (9th Cir. 2020) (en banc).

### A. **The Hasenkamps will succeed on the merits of their FHA/AzFHA claims.**

The FHA and the Arizona Fair Housing Act AzFHA make it unlawful to "discriminate against any person … in the provision of services or facilities in connection with his dwelling, because of a handicap" or that person or any person associated with that person. 42 U.S.C. § 3604 (f)(2). Discrimination includes a "refusal to make a reasonable accommodation in rules, policies, practices, or

services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The "reasonable accommodation" inquiry is highly fact-specific, requiring a case-by-case determination. *Dubois v. Association of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).

To prevail on a claim under the FHA, a plaintiff must prove all of the following elements: (1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation. *See* 42 U.S.C. § 3604(f)(3)(B); *U.S. v. California Mobile Home Park Management Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997).

Here, the Hasenkamps easily meet each of the above five elements. Consider the following facts in the record:

- Plaintiff A.H., a minor, has been diagnosed as having an emotional/mental disorder and was recommended by her Licensed Counselor, Rachael Turner, MS, LAC, to have an emotional support animal to enhance her ability to function independently. **Exhibit I**.
- Defendants knew about the existence of the Assistance animal because it was disclosed by the Hasenkamps on their Rental Application. **Exhibit A**. The Defendants did not request additional documentation at that time. When the Defendants physically saw the Assistance animal at the Property, Mr. Hasenkamp informed them that it was an Assistance animal and then e-mailed them a copy of a licensed counselor's recommendation that A.H. have an assistance animal. See **Exhibits F & I.**

- Defendants knew before the Lease was signed that the Hasenkamps were bringing an Assistance animal into the Property. **Exhibit A**. When they finally requested documentation from A.H's medical provider, Mr. Hasenkamp sent them **Exhibit I** as an attachment to **Exhibit F**.
- The request to have an Assistance animal (a dog) on the Property was reasonable because the Defendants had allowed the Hasenkamps to bring their two pet dogs onto the Property.
- The Defendants refused to allow the Hasenkamp's Assistance animal to remain on the Property unless they paid a $600.00 *non-refundable pet-clearning fee.* By way of contrast, Defendants required the following fees and deposits at the initial signing of the Lease in October 2020: a $300 *refundable* pet deposit, a $495 *non-refundable* cleaning fee, and a $100 *non-refundable* pet cleaning fee. In other words, the *non-refundable* fee for an Assistance animal was twice the size of the *refundable* pet deposit and six times larger than the *non-refundable* pet cleaning fee. **Exhibits B & F**.

Accordingly, refusing to provide housing unless the Hasenkamps pay (a) a $600 non-refundable "pet fee" or (b) remove the Assistance animal from the Property is a clear violation of the FHA and AzFHA.

Moreover, rescinding the Lease Renewal Agreement immediately after Mr. Hasenkamp outlined his family's rights under the FHA/AzFHA is an unlawful retaliation. *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001) ("To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action.").

**B. Federal courts have ruled that denial of housing is an irreparable injury.**

Plaintiffs seeking preliminary relief cannot rely on the mere possibility that

irreparable harm will occur but must instead show such harm is likely in the absence of an injunction. *Winter*, 555 U.S. at 22, 129 S.Ct. 365. To show irreparable harm a plaintiff must demonstrate that other legal remedies like money damages cannot cure that harm. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320-21 (9th Cir. 1994).

Here, the FHA contemplates and authorizes a court to grant injunctive relief:

> In a civil action under subsection (a), if the court finds that a discriminatory housing practice has occurred or is about to occur, the court…*may grant as relief, as the court deems appropriate, any permanent or temporary injunction*, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate.).

42 U.S.C. § 3613(c)(1) (emphasis added).

In *Arizona Recovery Housing Association v. Arizona Department of Health Services, et al*., this Court noted that a preliminary injunction is warranted when "someone is denied housing, or faces an imminent and likely threat of denial, simply because he or she is a member of a class that the FHA protects." 462 F. Supp.3d 990, 1000 (D. Ariz. 2020); *Poder in Action v. City of Phoenix*, 481 F.Supp.3d 962, 967 (D. Ariz. 2020)("Ninth Circuit law suggests that, in the housing context, a more acute risk of eviction is necessary to warrant preliminary injunctive relief.")

Here, unless the Court grants injunctive relief, the Hasenkamps will be evicted on January 31, 2022. This means that the Hasenkamps, a family with three minor children, including one with a mental/emotional disability, will be uprooted and forced to relocate to another home and possibly another school district. The social, emotional, and psychological damage to the Hasenkamps cannot easily be quantified and thus meets the definition of "irreparable."

### C. <u>**The balance of equities and public interest cut in the Hasenkamp's favor**</u>.

When considering a request for a preliminary injunction, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter,* 555 U.S. 7, 24, 129 S.Ct. 365, 376 (2008). The "public interest" mostly concerns the injunction's "impact on nonparties rather than parties." *Bernhardt v. L.A. Cnty.,* 339 F.3d 920, 931 (9th Cir. 2003). When a proposed injunction is narrow and limited to the parties, the public interest "will be at most a neutral factor in the analysis." *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1139 (9th Cir. 2009).

Here, if injunctive relief is *not* granted the Hasenkamps will be evicted from their home. If injunctive relief *is* granted, the status quo will remain the same: the Hasenkamps will stay in the home and will continue to make their monthly rental payments to the Defendants in full and on time. In September 2021 the parties both wanted to renew the Lease for an additional 12 months (through October 2022). Defendants apparently changed their minds once they learned that the Hasenkamps had an Assistance animal on the Property and raised their concerns that the Defendants' ultimatum of pay-a-penalty-or-be-evicted was a violation of the FHA and AzFHA. Nonetheless, injunctive relief would do nothing more than keep the parties in the same position that they originally contemplated in September 2021.

The "public interest" factor is neutral because the injunction will be narrow in scope and limited to the parties.

## III. CONCLUSION

The parties were on track to renew the Lease through October 2022 until Defendants rescinded the renewal when the Hasenkamps refused to pay a non-refundable fee for their Assistance animal. Now, the Defendants have threatened to evict the Hasenkamps from the Property by January 31, 2022. The Hasenkamps seek a preliminary injunction.

DATED this 29th day of December, 2021.

JENNINGS, STROUSS & SALMON, P.L.C.

By s/ Lindsay Leavitt
Lindsay G. Leavitt
Bina Aonad
One East Washington Street, Suite 1900
Phoenix, Arizona 85004-2554
*Attorneys for Plaintiffs*

**VERIFICATION**

I, Michael Hasenkamp, individually and on behalf of my minor daughter, A.H., declare as follows:

I have read the Application for Preliminary Injunction in this matter and have knowledge of its contents, which are true to the best of my knowledge, except to the extent that matters therein are stated upon information and belief, in which case, I believe those matters to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of December, 2021.

[signature]
Michael Hasenkamp

8020735v1(70895.1)